UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL ALTAMIRANO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAW INDUSTRIES, INC., *et al.*,<br><br>Defendants.<br>_____/ | No. C-13-0939 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>**(Docket Nos. 8-9)** |

## I. INTRODUCTION

Pending before the Court is Plaintiff's motion to remand this case to state court. This putative class action was filed in Alameda County Superior Court on January 22, 2013. Plaintiff brings suit against his employers Shaw Industries, Inc. and Shaw Industries Group, alleging violations of various wage and hour provisions of the California Labor Code, and seeks back wages on behalf of a putative class of Defendants' current and former non-exempt hourly employees. Defendants removed the case to federal court on March 1, 2013 under the Class Action Fairness Act ("CAFA"). The parties do not dispute that CAFA's minimal diversity and minimal class size requirements are met. Plaintiff seeks remand solely on the basis that Defendants have not made a sufficient showing that there is more than $5,000,000 in controversy in this case, as is required to establish federal jurisdiction under CAFA.

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff alleges that Defendants maintain various payroll policies and procedures that violate the California Labor Code.[1] First, Plaintiff alleges that Defendants engage in illegal "shaving" or "rounding" of time at the beginning and end of shifts, and around lunch periods, and that this practice results in hourly employees not being paid for all minutes actually worked. First Amended Complaint ("FAC") ¶¶ 13, 16, (Docket No. 1 at 103 of 144). While the complaint does not provide detail regarding the alleged rounding practices, time cards submitted by Plaintiff in connection with this motion indicate that Defendants pay employees in tenth-hour increments. Docket No. 20-1. Plaintiffs first and second causes of action are based on this practice, and allege failure to pay minimum wage for all hours worked, and failure to pay overtime wages for all overtime worked, respectively. FAC ¶¶ 28-39.

Plaintiff also alleges in his third cause of action that Defendants fail to provide proper meal breaks or compensation to employees who worked shifts longer than ten hours. FAC ¶¶ 40-45. California law requires that employees working ten or more hours per day must be provided with two 30 minute meal periods, subject to certain exceptions. Cal. Labor Code § 512(a). Where the employer does not provide a required meal period, the employer must pay the employee one hour of pay at the employee's regular rate for each day the meal period is not provided. Cal. Labor Code § 226.7. Plaintiff alleges that Defendants fail to provide a second meal break for employees working shifts lasting ten hours or more, and that Defendants also fail to provide one hour of pay in lieu of the second meal break. FAC ¶¶ 18-20.

Plaintiff further alleges in his fourth cause of action that Defendants fail to provide accurate wage statements to its hourly employees. FAC ¶¶ 46-55. Specifically, Plaintiff alleges that the wage statements provided to hourly employees (1) fail to include all hours worked; (2) fail to accurately state gross wages earned; (3) fail to include the employer's name and address; and (4) fail

---

[1] Defendants have provided the declaration of Human Resources Vice President Paul Richard, who states that Shaw Industries, Inc. is the employer for all putative class members, and that Shaw Industries Group does not employ any putative class members. Docket No. 14-1 ¶ 5. Since Plaintiff alleges in the complaint that this is inaccurate, and since this issue is not relevant to the instant motion, the Court refers to "Defendants" as the employer here, without deciding this issue.

2

to include accurate hourly rates and accurate corresponding number of hours worked at each hourly rate. FAC ¶ 22. Other than the failure to include the employer's name and address, all of these alleged violations appear to be based on the practices alleged in causes of action one through three. FAC ¶ 49. Plaintiff alleges that Defendants' failure to produce accurate wage statements was knowing and intentional. FAC ¶ 51. It is not entirely clear from the face of the complaint, but it is possible that the alleged failure to include the employer's name and address may be related to Plaintiff's allegation that Defendants Shaw Industries, Inc. and Shaw Industries Group Inc. ("Shaw Defendants") were joint employers with Does 1-50, who are unknown corporations who had arrangements to share the employees' services with the Shaw Defendants. FAC ¶¶ 6-8.

Plaintiff's fifth cause of action alleges failure to timely pay wages upon separation of employment. FAC ¶¶ 56-65. This cause of action is based in large part on the same practices alleged in causes of action one through three, in that Defendants' failure to pay wages for the shaved times and unprovided meal periods meant that these wages were not paid upon the end of employment. FAC ¶ 25. At some places in the complaint, it appears that these earlier allegations are the entire basis for the allegation that Defendants failed to timely pay wages at the end of employment, but in other places the allegations appear to contemplate the possibility that Defendants failed to timely pay wages upon separation apart from these underlying practices. FAC ¶¶ 25, 59.

Plaintiff additionally brings a cause of action for violations of California's unfair business practices statute. FAC ¶¶ 66-69. Finally, Plaintiff seeks civil penalties under California's Private Attorney General Act ("PAGA"). FAC ¶¶ 70-77.

In response to the instant motion, Defendant filed an opposition and provided the declaration of Vice President of Human Resources Paul Richard, who provided estimates of the number of employees in the putative class and the average hourly wage for employees in Defendant's California locations, and stated that putative class members are paid on a weekly basis. Docket No. 14-1. After reviewing the briefing on the motion, the Court continued the hearing and issued an order requesting additional information from Defendant relevant to the calculation of damages.

Docket No. 16. In response, Defendant filed a supplemental declaration from Mr. Richards, providing the following information:

- Defendants have employed 747 individuals in non-exempt positions in California between January 22, 2009 and the present; employed 657 individuals in such positions from January 22, 2010 and the present; and employed 643 individuals in such positions between January 22, 2012 and the present. Docket No. 17 ¶ 4.
- The average number of weeks worked per year by non-exempt California employees is 39 weeks per year in 2009; 44 weeks per year in 2010; 45 weeks per year in 2011; and 12 weeks per year in 2012. *Id.* ¶ 5.
- From January 22, 2010 to present, 330 individuals in non-exempt positions separated from employment with Defendants. *Id.* ¶ 6.
- The average hourly rate at Defendants' California locations during the class period is $17.92. *Id.* ¶ 7.
- The total number of 10 hour or longer shifts worked by putative class members from January 22, 2009 to the present is approximately 55,984. *Id.* ¶ 8.

In response to this supplemental declaration, Plaintiff filed a supplemental brief, and attached the declaration of attorney Jordan Bello and two of Plaintiff's time cards which were apparently randomly selected to provide an indication of the magnitude of rounding errors caused by Defendants' time shaving policy. Docket No., 20-1.[2]

As it was not clear from the supplemental Richard declaration whether the average hourly wage provided was for non-exempt employees only, this Court issued a further order directing Defendants to file evidence of the average hourly wage of non-exempt employees during the class period. Docket No. 23. Defendants responded with a second supplemental Richard declaration, which indicated that the $17.92 hourly wage did pertain to non-exempt California employees during the class period asserted in the complaint. Docket No. 24.

---

[2] Defendants raised various objections to the evidence filed with this supplemental brief. Docket Nos. 21, 22. Since the Court does not rely on this evidence in the analysis on this motion, however, it need not reach these objections.

4

Additional details are provided where relevant to the analysis below.

## III. DISCUSSION

Under the Class Action Fairness Act ("CAFA"), district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds $5,000,000; (2) any member of the plaintiff class is a citizen of a different state from any defendant; (3) the primary defendants are not states, state officials or other government entities against whom the district court may be foreclosed from ordering relief; and (4) the class has at least 100 members. 28 U.S.C. §§ 1332(d)(2), (d)(5). In the instant motion, the parties dispute only whether the amount in controversy requirement is met.

The burden of establishing removal jurisdiction under the CAFA lies with the proponent of federal jurisdiction. *Lowdermilk v. United States Bank National Association*, 479 F.3d 994, 997 (9th Cir.2007) (citing *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir.2006) (per curiam)). In the Ninth Circuit, courts must "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Where, as here, the plaintiff fails to plead a specific amount of damages, the defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Abrego*, 443 F.3d at 683.

In determining the amount in controversy for the purposes of removal jurisdiction, the court's determination may not "be based simply upon conclusory allegations." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995)). Nor can a court base its "jurisdiction on [a] Defendant's speculation and conjecture." *Lowdermilk*, 479 F.3d at 1002. The Ninth Circuit has described the following proper considerations in determining the amount in controversy:

> The district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal."

*Singer*, 116 F.3d at 377 (quoting *Allen*). A court may properly consider evidence the removing party submits in its opposition to remand, even if this evidence was not submitted with the original removal petition. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002).

In considering whether the amount in controversy is clear from the face of the complaint, "a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also Bolton v. U.S. Nursing Corp*., C 12-04466 LB, 2012 WL 5269738 (N.D. Cal. Oct. 23, 2012). This inquiry focuses on the amount put "in controversy" by the complaint, rather than the amount the Defendant will actually be obligated to pay. *Korn*, 536 F. Supp. 2d at 1205.

Plaintiff argues that in order to meet its burden to demonstrate removability, Defendant is required to produce "summary-judgment-type evidence." Courts considering this argument, however, have rejected the notion that the fact that courts *may* consider such evidence necessarily *requires* the removing party to produce it. *Jimenez v. Allstate Ins. Co.*, CV 10-8486 AHM FFM, 2011 WL 65764 (C.D. Cal. Jan. 7, 2011) (rejecting argument that defendant *must* offer summary-judgment-type evidence); *Gardner v. GC Servs., LP*, 10-CV-997-IEG(CAB), 2010 WL 2721271 (S.D. Cal. July 6, 2010) ("Contrary to Plaintiff's contentions, however, there is no obligation on Defendant to submit any declarations or 'summary-judgment-type evidence' in support of its assertion that the jurisdictional amount is met in the present case."). Plaintiff points to *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, where the court stated that:

> Where a plaintiff's complaint does not specify the amount of damages being sought, the removing defendant bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy requirement is satisfied. This burden can easily be met if it is facially apparent from the allegations in the complaint that plaintiff's claims exceed $75,000. If the amount in controversy is not clear on the face of the complaint, however, defendant must do more than point to a state law that might allow recovery above the jurisdictional minimum. Rather, the "defendant must submit 'summary-judgment-type evidence' to establish that the actual amount in controversy exceeds $75,000."

199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal citations omitted). This case does not support the argument that a defendant must under all circumstances produce "summary-judgement-type evidence." Indeed, it specifically contemplates the possibility that a defendant may meet its burden of demonstrating the amount in controversy based on assuming the allegations in the complaint to be true, even where the complaint does not specify the amount of damages sought. This does not mean,

6

however, that summary-judgment-type evidence is never necessary under this analysis. If, for example, the allegations in the complaint provide no basis for certain assumptions in the calculations, a defendant must provide some evidence rather than relying on mere unsupported speculation or conclusory allegations. *See Singer*, 116 F.3d at 377.

The parties also contest whether Defendant is entitled to base its calculations on the assumption that each member of the class will have experienced each of the types of violations listed in the complaint. Defendant does identify some cases where courts have been willing to assume violation rates of 100% in calculating the amount in controversy. *See Thomas v. Aetna Health of California, Inc.*, 1:10-CV-01906-AWI, 2011 WL 2173715 (E.D. Cal. June 2, 2011) (report and recommendation); *Muniz v. Pilot Travel Centers LLC*, *Muniz*, CIV. S-07-0325FCDEFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007); *Navarro v. Servisair, LLC*, C08-02716 MHP, 2008 WL 3842984 (N.D. Cal. Aug. 14, 2008). These cases reason that the plaintiff is the master of her or his own complaint, and that the plaintiff could thus avoid removal by limiting the allegations therein. *Muniz*, 2007 WL 1302504 at *4. These courts have additionally expressed concern that imposing overly stringent requirements on defendants to proving the amount in controversy would run the risk of essentially asking defendants to prove the plaintiffs' case. For example, the court in *Muniz* held that "a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" 2007 WL 1302504, at *2 (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky.1994)); *Korn*, 536 F. Supp. 2d at 1204-05. The *Muniz* court thus found that the defendant is not obligated "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz*, 2007 WL 1302504 at *5; *see also Thomas v. Aetna Health of California, Inc.*, 1:10-CV-01906-AWI, 2011 WL 2173715 (E.D. Cal. June 2, 2011) ("requiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case"); *Bryant v. Serv. Corp. Int'l*, C 08-01190SI, 2008 WL 2002515 at *6 (N.D. Cal. May 7, 2008) ("defendants cannot be expected to try the case themselves for purposes of establishing jurisdiction, and then admit to the opposing party and to the Court that a certain number of wage and hour violations did indeed occur").

Other courts, however, have rejected this approach and found that while defendants may base their calculations on the allegations in the complaint, they may not assume violation rates of 100% where this is not clearly alleged in the complaint and is unduly speculative given the complaint's other allegations. For example, the court in *Roth v. Comerica Bank*, surveyed the approach taken by different courts, and concluded that cases allowing defendants to rely on unsupported assumptions of 100% violation rates "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction." 799 F. Supp. 2d 1107, 1129 (C.D. Cal. 2010) (citing *Abrego*, 443 F.3d at 685). Further, the *Roth* court found that allowing defendants to base calculations on unsubstantiated assumptions about violation rates was inconsistent with the "strong presumption against removal jurisdiction." *Id.* (quoting *Gaus*, 980 F.2d at 566 ). The court found it especially appropriate to require a defendant to provide evidence to justify assumptions about the rate of violation when the defendant is in the best position to produce evidence on the question. *Id.* at 1130.

Courts following this approach have evaluated the defendant's calculations and the assumptions on which they are based to determine whether those assumptions are reasonable in light of the allegations in the complaint, or unduly speculative. For example, the court in *Roth* found it overly speculative to assume each class member was denied 3-5 hours of overtime pay per week, particularly since some class members worked only part time, but found it reasonable to assume each class member suffered at least one underpayment in the course of employment in light of the complaint's allegations of uniform policies applying to all employees that frequently caused violations. 799 F. Supp. 2d at 1120-26. Similarly, the court in *Trang v. Turbine Engine Components Technologies Corp.*, rejected as overly speculative the assumption that "every putative class member suffered a violation of every cause of action applicable to them during every pay period," but accepted the defendant's calculation as to penalties owed for failure to timely pay compensation upon termination where the plaintiff alleged that the defendant had still not paid the compensation owed. CV 12-07658 DDP RZX, 2012 WL 6618854, at *2-4 (C.D. Cal. Dec. 19, 2012); *see also Ruby v. State Farm Gen. Ins. Co.*, C10-02252 SI, 2010 WL 3069333 (N.D. Cal. Aug. 4, 2010) (conducting claim-by-claim analysis of whether the defendant's assumptions were

8

reasonable); *Baillie v. Account Receivable Mgmt. of Fla.*, C 11-0021 CW, 2011 WL 566817 (N.D. Cal. Feb. 14, 2011) (analyzing reasonableness of defendant's assumptions in light of allegations in complaint).

Additionally, at least some courts approving calculations based on the assumption of 100% violation rates may have been conducting a similar analysis, concluding that such assumptions are justified only where they were supported by the allegations in the complaint. In *Thomas*, for example, the defendants assumed that all class members had experienced a violation, but based the calculations on the assumption that any given employee experienced a violation during only two pay periods during the course of the year, rather than assuming that all employees experienced a violation during each pay period. 2011 WL 2173715 at *20. The court specifically considered defendant's assumptions in light of the complaint's allegations regarding entitlement to penalties under the Private Attorney General Act ("PAGA"):

> Plaintiff contends that Defendants' calculations assume a 100% violation rate during the two pay periods considered, which Plaintiff asserts is "unsound." However, because Defendants' calculations only consider two pay periods out of approximately an entire year, and because the calculations only consider one type of violation for which PAGA applies, the assumption that every employee suffered at least two violations of a certain type during the relevant time period does not render the calculations impermissibly speculative. It is also reasonable to presume that Defendants' policies with regard to wages and hours of its employees was uniform and thus any violation is likely to apply to the entire group of employees. Further, Plaintiff is essentially requesting PAGA penalties for 100% of the violations-putting all possible provable violations at issue for purposes of the amount in controversy.

*Id.* at *20; *see also Korn*, 536 F. Supp. 2d at 1205-06 (finding it reasonable to base jurisdictional amount on maximum penalty amount where complaint had specifically requested the maximum statutory penalty even though it was possible that less could be awarded at trial); *but see Bryant*, 2008 WL 2002515 at *3-6 (allowing a number of broad assumptions in calculating the amount in controversy where Defendants' estimate yielded an amount in controversy of over $200 million for a putative class of over 10,000 employees even before accounting for all claims and attorney's fees); *Navarro*, 2008 WL 3842984 at *9 ("Although plaintiff claims defendant simply invents numbers in order to meet the amount in controversy requirement, he offers no alternative. For instance, he

9

claims that defendant's calculations take into account three meal period violations per week without arguing that the same is untrue.").

Overall, with some exceptions, most of the cases conducting this analysis appear to allow the defendant to assume a 100% violation rate only where such an assumption is supported directly by, or reasonably inferred from, the allegations in the complaint. *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) ("Since Defendant's calculations were relatively conservative, made in good faith, and based on evidence wherever possible, the Court finds that Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000."). While this approach is not followed by all of the cases, it is more in line with guidance from the Ninth Circuit regarding the burden of proof and the presumption against removal. On this motion, therefore, this Court will evaluate the reasonableness of any assumed violation rate based on the evidence submitted and the allegations contained in the complaint.

A.  <u>Calculations Contained in Defendants' Opposition</u>

The calculations for the amount in controversy proposed by Defendants in their opposition to Plaintiff's motion contained a number of assumptions. Some of these assumptions were reasonable in light of the allegations in the complaint. For example, in calculating penalties under the second cause of action Defendants assumed that each employee had experienced at least one rounding error in each pay period. Docket No. 14 at 6-10. Given Plaintiff's allegations that the time shaving policy applied to all putative class members, and given that penalties would attach even if there was only one minor violation during a given pay period (*e.g.* an employee underpaid by 1-2 minutes), assuming a 100% violation rate is not unreasonable. In calculating the amount in controversy under the fifth cause of action, Defendants assumed that each employee separating from employment had some back wages owed at the time of separation, and that these wages were not paid within the first month following separation. *Id.* at 15-16. This assumption is not unreasonable given Plaintiff's allegations that all employees were subject to the time shaving policy, and that employees frequently missed meal periods when working shifts of ten hours or longer.

On the other hand, a number of assumptions Defendants made in their calculations were not reasonable in light of the allegations contained in the complaint. For example, Defendants assumed, without providing any basis for the assumption, that each employee experienced two hours of unpaid time lost due to the time shaving policy every pay period that they worked. *Id.* at 6-10. Defendants also assumed on some calculations that all employees in the putative class worked every pay period during the class period, yet assumed that 10% of the putative class separated from employment during the class period. *Id.* at 9-10, 15-16. Cumulatively, the various unfounded assumptions made in Defendants' calculations introduced a great amount of uncertainty into the estimates of the amount in controversy, making it difficult to discern whether this amount was over $5,000,000.

In light of this, the Court ordered Defendant to submit supplemental evidence as described above. In requesting this supplemental evidence, the Court was mindful of seeking information that was easily determinable from Defendants' records, but that would not serve to inculpate Defendants on the merits of any of Plaintiff's claims. As such, the Court requested additional information on the number of putative class members working for Defendants during each of the relevant periods of time (*e.g.* within the different limitations periods for the various claims), the average number of weeks employees worked per year, the number of putative class members separating from employment during the relevant period of time, the average wage for the putative class, and the total number of ten hour shifts worked by putative class members during the relevant period of time. Docket No. 16. Such information would enable the Court to more accurately estimate the amount in controversy without requiring Defendants to prove Plaintiff's case for him. Defendants responded by providing the information discussed above.

B. <u>Basis for Amount in Controversy Calculations</u>

In light of the updated and more specific information provided by Defendants, the Court finds that Defendants have met their burden of showing by a preponderance of the evidence that the amount in controversy in this case exceeds $5,000,000. Though the new information does not alleviate the need for making assumptions in calculating the amount in controversy, it removes much of the uncertainty, and the remaining assumptions are reasonable in light of the allegations in the complaint and the evidence submitted by the parties. A table detailing the amount in controversy

11

calculations is attached to this order as Appendix A, and an explanation of the calculations is as follows.

### 1. First Cause of Action: Back Wages from Time Rounding

Plaintiff's first and second cause of action are both based on allegations that Defendants' time keeping system improperly rounded or shaved time off the beginning and end of employee's days, and around lunch breaks. FAC ¶¶ 28-39. The complaint alleges that this policy applied to all hourly employees, and that Defendants owe "each of [their] hourly employees for the unpaid 'shaved' minutes and/or illegally 'rounded' minutes." FAC ¶¶ 13, 14, 16, 17. As the parties do not dispute that this claim is subject to a four year statute of limitations period, this claim reaches back to January 22, 2009.

While Defendants have provided evidence that there were 643 putative class members working for them between January 22, 2012 and the present, they do not provide exact numbers for the number of putative class members during the years 2009 through 2011. *See* Docket No. 17 ¶ 4. The other numbers Defendants provide regarding the number of employees during various points in time, however, do not indicate that the number of employees in 2012 was significantly greater or lesser than in previous years. *See id.* (Defendants employed 657 putative class members between January 22, 2011 and the present, and 643 putative class members between January 22, 2012 and the present). It is thus reasonable to use 643 as an estimate of the number of putative class members employed during the years 2009 through 2011. The supplemental Richard declarations provide the average wage for putative class members, and the average weeks putative class members worked per year for each year of the class period. Docket No. 17 ¶ 5; Docket No. 24 ¶ 4. As there is evidence in the record for these figures, this aspect of the calculations calls for no speculation.

Defendants' notice of removal and opposition assumed that each employee had experienced two hours of unpaid time because of the time shaving policy, which Plaintiff argued was unduly speculative and unreasonable. Neither the complaint nor the parties' briefs provide the details about the time rounding policy, and there is not evidence in the record providing a clear estimate of the frequency or magnitude of violations caused by the policy. In his supplemental reply brief, Plaintiff submitted two randomly selected time cards and calculations indicating that Defendants' time

shaving policy resulted in him working 35 minutes without pay one week, and 11 minutes without pay the other. Docket No. 20-1 ¶¶ 6, 9. Plaintiff provides nothing to indicate, however, that the time cards in this very small sample are representative with regards to his employment, let alone with regards to the entire putative class. The Court thus rejects the suggestion that the total amount shaved during these two weeks is representative of the average time shaved for the entire putative class during the entire class period.

The Court does note, however, that these time cards indicate that Defendants pay employees in tenth of an hour increments. Docket No. 20-1 Ex. 1, 3. This is significant because large rounding errors are less likely under these circumstances than if Defendants paid employees in quarter hour increments. Even assuming that Defendants pay employees only when they have worked an entire tenth of an hour (as opposed to rounding to the nearest tenth of an hour), the largest rounding error possible is a mere 5 minutes. Assuming that such a rounding error occurred four times each day (at the beginning and end of each shift and lunch period), and every day in a five day work week would still yield a weekly total violation that falls short of the two hours per week of lost time used in Defendants' proposed calculations.

As show in Appendix A, using an estimate of 30 minutes per week yields an amount in controversy of $806,579.20 for the first cause of action. This estimate assumes that each employee experienced an average of six minutes of unpaid time per day. Given the complaint's allegations that all employees were subject to this policy, such an estimate is not unreasonable; it is rather conservative. While it is true, as Plaintiff objects, that Defendants have in their possession records that would allow a more precise calculation of the average time lost per week, requiring Defendants to produce this information would amount to requiring them to prove up Plaintiff's case on the merits. *See Muniz*, 2007 WL 1302504 at *5 (defendant is not required "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."). Thus, for the purposes calculating the amount in controversy for this motion, and on the record that is currently before the Court, the Court finds that it is reasonable to assume an average of 30 minutes per week of time (6 minutes per day) lost to the time shaving policy.

2.     Second Cause of Action:  Penalties for Time Rounding

In addition to back wages, Plaintiff seeks civil penalties based on the alleged unpaid wages and overtime caused by improper rounding or shaving of time.  FAC ¶¶ 72-76.  The complaint contains no specific estimate of penalties owed, nor does it specify how many employees were affected or how many violations occurred per affected employee.

Defendants' opposition calculates the amount in controversy for the penalties on these causes of action under California Labor Code § 558(a)(1)-(2), which provides a $50 penalty for each underpaid employee for an initial violation, and a $100 penalty for any subsequent pay periods in which there is a violation as to that employee.[3]  The statute of limitations on penalties for PAGA claims is one year.  *Baas v. Dollar Tree Stores, Inc.*, C 07-03108 JSW, 2009 WL 1765759, at *5 (N.D. Cal. June 18, 2009).

Given Plaintiff's allegations that the rounding policy applied to all non-exempt employees, the assumption that there was at least one violation per employee per pay period is a reasonable one.  Since the penalties apply even when there is only one violation in a pay period, and regardless of the magnitude of the violation, they would attach even if a given employee was only underpaid by a few minutes in any given pay period.  The various Richard declarations provide evidence that putative class members are paid on a weekly basis, and that a total of 643 employees worked an average of 12 weeks during the relevant limitations period.  Docket No. 14-1 ¶ 7; Docket No. 17 ¶ 4-5.

Plaintiff argues that Defendants' calculations overestimate the penalty amount because they apply the "subsequent" violation rate inappropriately.  Various cases have held that the rate for "subsequent" violations applies only after the employer has received notice that its conduct violates the labor code.  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209, 78 Cal. Rptr. 3d 572, 614 (2008); *Jimenez v. Menzies Aviation, Inc.*, C 10-03477 SBA, 2013 WL 1411228 (N.D. Cal. Apr. 8, 2013).  Since there is no indication of when Defendants became aware that the time shaving policy violated the labor code, it there is nothing to indicate that the "subsequent" rate should apply

---

[3] From Plaintiff's complaint, it appears that he may also be claiming penalties under California Labor Code § 1197.1 for these violations.  Defendants do not include calculations under this section in their petition for removal, and Plaintiff does not raise the issue.

starting the second week there was a violation. As such, the Court assumes for the purposes of this motion that the initial violation rate applies to all weeks within the limitations period. Again, the Court has employed the conservative assumption.

As shown in Appendix A, using the figures provided by Defendant and using the initial violation rate for all weeks yields an amount in controversy of $385,800 for the second cause of action.

### 3. Third Cause of Action: Missed Meal Breaks

In Plaintiff's third cause of action, he alleges that "Defendants [sic] meal break policy resulted in non-exempt employees not receiving meal periods when they worked over ten hours in a workday." FAC ¶ 42. Under California Labor Code § 226.7, an employer must pay employees one hour of wages at the employee's normal rate for each meal or rest period that the employed failed to provide. While Plaintiff alleges that this policy was applied to all non-exempt employees, and that he and "other non-exempt employees would work on workdays in shifts long enough to entitle them to two meal periods under California law," there is nothing in the complaint indicating how often employees worked over ten hours in a workday, nor what percentage of non-exempt employees worked such shifts. FAC ¶¶ 19-20. Defendants have provided evidence, however, that during the relevant period, putative class members worked 55,984 shifts of ten hours or longer. Docket No. 17 ¶ 8. Given Plaintiff's allegations about the pervasiveness of this policy, it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action.

Given the figures provided by Defendant on the number of shifts and the average hourly wage for the putative class, the amount in controversy on this cause of action comes to $1,003,233.28. *See* Appendix A.

### 4. Fourth Cause of Action: Inaccurate Wage Statements

Plaintiff's fourth cause of action alleges that Defendants failed to provide accurate wage statements, in that the statements failed to include accurate information about hours worked, gross wages, wage rates, and employer's name and address. FAC ¶ 50. Plaintiff alleges that Defendant's failure was knowing and intentional. FAC ¶ 51. California Labor Code § 226(e) provides that

where an employer has knowingly and intentionally failed to provide an accurate wage statement, the employee:

> is entitled to recover the greater of all actual damages [suffered because of the employer's failure] or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

As discussed above, Defendants have provided evidence that a total of 643 employees worked an average of 12 weeks during the relevant limitations period for penalties, and were paid on a weekly basis. Docket No. 14-1 ¶ 7; Docket No. 17 ¶ 4-5. Given Plaintiff's allegations about the pervasiveness of the policies that are the subject of the first three causes of actions, it is reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement. Assuming a 100% violation rate is especially justified in light of the fact that Plaintiff's claim also alleges that the wage statements failed to accurately provide the employer's name and address, a violation that would presumably be consistent across all wage statements in all pay periods.

Though Defendants' opposition calculated penalties under this section assuming the $50 violation rate only for the first week, Plaintiffs did not raise the same objection here that they did on the second cause of action regarding the use of the subsequent violations penalty rate. Docket No. 9 at 7; Docket No. 15 at 10-11. Plaintiff's supplemental reply even assumes that the $100 rate applies to all weeks after the initial week. Docket No. 20 at 7. Given Plaintiff's allegation in the complaint that this violation was knowing and intentional, and Plaintiff's apparent concession that the higher rate for subsequent violations applies here, the Court finds it reasonable to apply the higher penalty rate for all but the initial week.

As shown in Appendix A, using the information above the amount in controversy on the fourth cause of action is $739,450.

5.  Fifth Cause of Action:  Withholding Wages Upon Termination

Plaintiff's fifth cause of action alleges that Defendants failed to timely pay all wages owed upon separation of employees from employment. Under California law, employers must pay all

16

wages owed within 72 hours when employees resign, and immediately where the employee is discharged or laid off. Cal. Labor Code §§ 201-202. When an employer willfully fails to timely pay wages upon separation, the employee is entitled to be paid her normal wages for every day the wages are late, up to a maximum of 30 days. Cal. Labor Code § 203. Plaintiff alleges that "at all relevant times . . . Defendants maintained a policy or practice of not paying hourly employees upon separation of employment wages for all unpaid wages (as described in more detail above) and/or not paying them final wages timely upon separation of employment," and that such policy was willful. FAC ¶ 59-60.

Defendants have provided evidence that 330 putative class members separated from employment with Defendants during the relevant period of time. Docket No. 17 ¶ 6. Given Plaintiff's allegations about the uniformity of the time rounding policy and the pervasiveness of the denial of a second meal break on 10 hour shifts, it is reasonable to assume that each employee leaving employment would have experienced at least one incident resulting in underpayment during the course of their employment. Similarly, as there is nothing in the complaint or the record to suggest that Defendants paid employees these unpaid wages at some point during the month after they separated from employment, awarding penalties for the entire 30 pay period is reasonable. Defendants assumed an 8 hour work day in calculating these penalties. Plaintiff did not object to this assumption, and the Court finds it reasonable in light of the evidence provided that the "vast majority" of the putative class members are full time employees. Docket No. 14-1 ¶ 4.

As shown in Appendix A, using these numbers yields an amount in controversy of $1,419,264 for the fifth cause of action.

### 6. Estimated Attorneys' Fees

Where the underlying law provides for the payment of attorneys' fees, the amount of fees is included in calculating the amount in controversy. *Lowdermilk*, 479 F.3d at 1000. In the Notice of Removal, Defendants calculate estimated attorneys' fees as 25% of the total amount in controversy for the other claims. Plaintiff does not challenge this percentage, and the Ninth Circuit has recognized this percentage as reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").

1  As the amount in controversy on the five causes of actions totals $4,354,326.48, adding attorneys
2  fees yields a total amount in controversy of $5,442,908.10.  *See* Appendix A.[4]

### IV. CONCLUSION

For the foregoing reasons the Court concludes that Defendants have met their burden of establishing by a preponderance of the evidence that the amount in controversy in this case exceeds $5,000,000.  As discussed above and detailed in Appendix A, looking to the allegations in the complaint and the evidence in the record, and making reasonable, conservative estimates for unknown figures yields an estimated an amount in controversy of $5,442,908.10.  Plaintiff's motion to remand this matter to state court is therefore **DENIED**.

This order disposes of Docket Nos. 8 and 9.

IT IS SO ORDERED.

Dated:  June 14, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[4] Defendants also argue in the Notice of Removal that the amount in controversy should include the costs of implementing any policy changes should Plaintiff prevail on his unfair business practices claim, they offer no estimate of such costs.  Notice of Removal ¶ 26.