UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL ALTAMIRANO,<br><br>  Plaintiff,<br><br>  v.<br><br>SHAW INDUSTRIES, INC., et al.,<br><br>  Defendants. | Case No. 13-cv-00939-HSG<br><br>**ORDER DENYING MOTION FOR PRELMINARY APPROVAL**<br><br>Re: Dkt. No. 68 |

Before the Court is Plaintiff's unopposed motion for preliminary approval of the settlement and for certification of the settlement class. Dkt. No. 68. Pursuant to the parties' Settlement Agreement, Defendants Shaw Industries, Inc. and Shaw Industries Group, Inc. (collectively, "Shaw"), have agreed not to oppose Plaintiff's motion. Also pending before the Court is Plaintiff's motion to amend the complaint for purposes of settlement. *Id*.

On March 26, 2015, the Court held oral argument, during which it questioned the parties extensively about the terms of their Settlement Agreement and ordered supplemental briefing on certain issues. *See* Dkt. No. 71. After careful consideration of the Settlement Agreement, the parties' briefs, and counsel's arguments during the hearing, the Court **DENIES** Plaintiff's motion for preliminary approval without prejudice.

**I.  BACKGROUND**

  **A.  Litigation History**

This action began on January 22, 2013, when Altamirano filed the original Complaint in the Superior Court of the State of California, County of Alameda, Case No. RG13664252. Altamirano filed a First Amended Complaint ("FAC") on February 13, 2013. On March 1, 2013, Shaw removed the action to the United States District Court for the Northern District of California. Plaintiff submitted a Second Amended Complaint ("SAC") to the Court in conjunction

with the instant motion seeking preliminary approval of the class action settlement. *See* Dkt. No. 57-2, 68-2.

The SAC asserts nine causes of action related to allegations concerning Shaw's (1) payroll policies that "shaved" or "rounded" minutes from daily time worked, resulting in minimum wage and overtime violations, *see* SAC ¶¶ 13-19; (2) failure to pay employees for legally required meal breaks and rest periods, *id*. ¶¶ 20-27; (3) failure to provide accurate wage statements, *id*. ¶¶ 28-30; and (4) failure to pay employees all wages due at the time of termination or resignation, *id*. ¶¶ 31-32. The parties participated in a mediation on October 25, 2013 and, while no settlement was reached that day, continued to discuss settlement with the aid of the mediator until an agreement was finalized approximately one year later. *See* Mot. at 4. Plaintiff filed a motion for preliminary approval of the settlement agreement on November 12, 2014, Dkt. No. 57, which was amended and re-noticed after this action was reassigned to the undersigned, Dkt. No. 68.

### B. Overview of the Proposed Settlement

The parties have submitted a Joint Stipulation and Settlement Agreement (the "Settlement Agreement") for the Court's review. *See* Declaration of Joseph Lavi ("Lavi Dec."), Ex. 1. The key provisions of the Settlement Agreement are as follows.

*Payment Terms*: In full settlement of the claims asserted in this lawsuit, Shaw agrees to pay $500,000 within 15 business days from the date of entry of the order granting final approval of the class action settlement. *Id*. This amount includes payments to class members for release of their claims, any award of attorneys' fees and costs, the Claims Administrator's costs, a $1,500 payment to the Labor and Workforce Development Agency pursuant to California's Private Attorneys General Act ("PAGA"), and any incentive award to Mr. Altamirano. *Id*. at 18-19.

The Settlement Agreement estimates that if the Court approves the maximum amount of attorneys' fees and costs, the PAGA Payment, and the incentive award to Mr. Altamirano, the estimated amount distributable to the class should be approximately $328,100. *Id*. at 19. The amount payable to each class member depends on the number of class members that opt into the Settlement. *Id*. at 20. Payments are calculated by dividing each individual class ember's gross wages earned during class period by the total gross wages earned by all participating class

1  members during the class period, and then multiplying that percentage by the distributable amount
2  (the portion of the settlement after the fees, costs, and payments detailed in the previous paragraph
3  have been made). *Id*. at 20. The settlement amount is non-reversionary, meaning that in no
4  circumstance will any of the $500,000 revert to Shaw, regardless of how many class members
5  choose to participate in the settlement. *Id*. at 19. Should all 747 class members opt into the
6  Settlement, each will receive approximately $440. Mot. at 7.

7  *Attorneys' Fees and Costs*: The Settlement Agreement authorizes class counsel to apply to
8  the Court for an award of attorneys' fees and costs incurred in litigating this case, which Shaw
9  agreed not to oppose. Lavi Dec., Ex. 1 at 21. Class Counsel will request $125,000 in attorneys'
10 fees and $17,000 in costs. *Id*. at 18.

11 *Incentive Payment*: The Settlement Agreement authorizes Mr. Altamirano to seek a $4,400
12 incentive payment for his participation in this lawsuit, which Shaw will not oppose. *Id*. at 21.

13 *Releases*: The Settlement Agreement provides that all class members other than those who
14 opted out, shall release Shaw from

> [A]ll Released Claims, whether known or unknown during the Class Period. Nothing in this Agreement abridges a Class Member's right [to] file a charge or participate in any manner in an investigation, hearing, or proceeding under the laws enforced by Equal Employment Opportunity Commission. Plaintiff and Defendant stipulate and agree that the consideration paid to the Class Members pursuant to this Agreement compensates the Class Members for all wages and penalties due to them arising from the claims alleged in the Operative Complaint.

*Id*. at 27. The Settlement Agreement defines "Released Claims" to mean:

> [A]ny and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages or causes of action which relate to any claims which were alleged or could have been alleged based on the facts in the Operative Complaint filed by Plaintiff, on his behalf and on behalf of the Class Members in this Action during the Class Period, through the date of preliminary approval of this settlement by the Court, for (1) Failure to pay minimum wages for all time worked in violation of California Labor Code sections 1194 and 1197; (2) Failure to pay overtime wages for all time worked in violation of California Labor Code section 510; (3) Failure to provide meal periods or pay meal period premiums in violation of California Labor Code sections 512 and 226.7; (4) Failure to provide accurate wage statements in violation of California Labor Code section 226; (5) Failure to timely pay final wages in violation of Labor Code sections 201 and 202; (6) Unfair

3

United States District Court
Northern District of California

> business acts and practices in violation of California Business and Professions Code sections 17200, et seq.; and (7) Civil Penalties pursuant to California Labor Code sections 2698, et seq.; (8) Failure to pay minimum wages for all time worked in violation of 29 U.S.C. 201, et seq.; (9) Failure to pay overtime wages for all time worked in violation of 29 U.S. C. 201, et seq.; and (10) Failure to authorize and permit rest breaks or pay rest break premiums in violation of California Labor Code section 226.7, as well as claims for restitution and equitable relief, expenses, punitive damages, waiting time penalties, penalties of any nature whatsoever, and attorneys' fees and costs, arising out of the claims which were alleged in the Operative Complaint. For Class Members who submit Claim Forms, "Released Claims" include Fair Labor Standards Act ("FLSA") claims whether known or unknown, arising during the class period for the Class Members, based on the claims reasonably related to those alleged in the Lawsuit. . . .
>
> . . . This release is limited in time to the Class Period covering the Class Members who worked for the Released Persons in the State of California, and limited to the causes of action that were alleged in the Operative Complaint or based on the facts alleged in the Operative Complaint. Nothing in this Agreement abridges a Class Member's right to file a charge or participate in any manner in an investigation, hearing, or proceeding under the laws enforced by Equal Employment Opportunity Commission.

*Id*. at 5-6. Further, the Settlement Agreement provides that, with respect to the foregoing Released Claims, "expressly waives the benefits of California Civil Code §1542." *Id*. at 6.

*Procedure for Claims and Settlement*: Class Counsel is required to move for preliminary and final Court approval of the Settlement Agreement. *Id*. at 10. No later than 15 days after the Court's preliminary approval of the Settlement Agreement, Shaw will provide CPT Group, Inc.—the proposed Claims Administrator—a list containing the class members' names, last known addresses, last known telephone number, total wages earned during the class period, and social security number, which will be used to send notice packets. *Id.* at 12. CPT Group will mail a notice packet to each class member, which will consist of the proposed Class Settlement Notice and the Claim Form, no later than 20 days of receipt of the class member list. *Id*. Before mailing the Notice of Settlement, CPT Group will review the national change of address registry and/or skip trace to determine the most up-to-date address of all class members. *Id*. CPT Group will re-mail the Notice of Settlement and Claim Form to any class member whose mail was returned with a forwarding address and will seek an address correction and send a redirected Notice of Settlement to any class members whose Notice is returned as undelivered. *Id*. CPT Group will

4

send a reminder postcard 20 days before the deadline for the class members to submit their claim forms. *Id.*

The Claim Form requires class members to fill out their first and last names, street address, including city, state, and zip code, telephone number, and signature. *Id*. at 12-14. All Claim Forms must be sent by U.S. mail and postmarked within 45 days from the original date of mailing. *Id.* Claim forms that are post-marked after that date will be accepted prior to final approval hearing only if the class member: (1) is seriously ill or incapacitated, or (2) failed to receive the Claim Form within 45 calendar days of mailing due to an incorrect address, provided the Class Member provides sufficient indicia to CPT Group to that effect. *Id*. Any person who fails to submit a valid and timely Claim Form shall not receive an individualized Settlement Payment from the Settlement, but, unless they submit a timely request to be excluded (Opt-Out) from the Settlement, they will still be bound by the Agreement. *Id.* No later than 15 business days following the close of the Claims filing period, the Settlement Administrator shall provide Class Counsel and counsel for Shaw with a declaration attesting to the completion of the notice process, which shall be submitted to the Court along with the motion for final approval. *Id*. at 16.

*Unclaimed Settlement Funds*: The Settlement Amount will be distributed to class members returning a claim form based on each member's proportional share of wages earned during the class period when compared to the total wages earned by all class members who returned claim forms. Accordingly, there will be no unclaimed settlement funds.

*Objections*: Any class member who has not opted out may file an objection to the Settlement Agreement (or any of its terms) within 45 calendar days after the Class Settlement Notice is mailed to the class member. *Id*. at 17.

*Settlement Award Checks*: Within 15 days of receipt of Shaw's payment of the Settlement Amount, the CPT Group shall issue checks for participating class members for an amount calculated using the formula discussed above, minus any deductions required by law. Any deduction for wages that normally would apply to the class members is to be borne by the class members from the value of their claim. Any settlement checks remaining uncashed after 180 calendar days after being issued shall be void and the amount shall be escheated to the State of

5

California pursuant to California Code of Civil Procedure Section 1513. *Id.* at 23.

## II. PRELIMINARY APPROVAL

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a court approves a settlement it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

In general, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026. However, where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D.Cal. 2007); *see also Alvarado v. Nederend*, No. 08-cv-01099 OWW DLB, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed

1  settlement, including a determination that there are no obvious deficiencies such as indications of
2  a collusive negotiation, unduly preferential treatment of class representatives or segments of the
3  class, or excessive compensation of attorneys . . . ."). The Court considers the settlement as a
4  whole, rather than its components, and lacks the authority to "delete, modify or substitute certain
5  provision." *Id*. (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d
6  615, 630 (9th Cir.1982)). Rather, "[t]he settlement must stand or fall in its entirety." *Id*.

7  The Court finds that the settlement agreement suffers from an obvious deficiency in that
8  the payment formula distributes the settlement amount to class members based on the hours
9  worked during the class period, irrespective of the length of the shifts they worked during that
10 time. *See* Lavi Dec., Ex. 1 at 20. At the March 26, 2015 hearing on the instant motion, the Court
11 questioned the parties concerning whether a subclass was appropriate, given that many employees
12 in the class definition worked shifts shorter than necessary to trigger a second meal break under
13 California law. *See* Mot. at 2 (citing *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004,
14 1045 (Cal. 2012) for the proposition that a second meal break is required only when a non-exempt
15 employee works a shift of ten hours or longer). Likewise, no employee that worked less than a
16 ten-hour shift would be eligible for a third rest break. *See id.* (quoting *Brinker*, 53 Cal. 4th at 1029
17 ("Employees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in
18 length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more
19 than 10 hours up to 14 hours, and so on.")). The Court directed the parties to submit supplemental
20 briefing disclosing the percentage of shifts ten hours or longer worked by the employees in the
21 putative class during the class period. Shaw has submitted a declaration stating that percentage is
22 9.8%. *See* Dkt. No. 77.

23 According to the calculations derived from an extrapolation of 11.7% of the relevant data,
24 the substantial majority of the injury allegedly sustained by the putative class is attributable to this
25 relatively small sliver of employee shifts. *See* Lavi Dec. at ¶ 18-19. Of the $3.4 million estimated
26 maximum potential exposure to Shaw, approximately $2.35 million (or approximately 70%) is
27 attributable to missed second meal breaks or third rest breaks. *Id.* The parties' proposed method
28 of allocation—which, for purposes of calculating individual class member payouts, treats hours

worked by employees with relatively short shifts as equal to hours worked by employees with shifts of ten hours or longer—ignores this reality. The Court will not grant preliminary approval to a settlement that fails to differentiate between employees that worked shifts below and above ten hours.[1]

### III. CONDITIONAL CLASS CERTIFICATION AND NOTIFICATION PROCEDURES

Because the Court denies preliminary approval of the settlement, the Court declines to decide at this time whether: (1) conditional certification of the class for settlement purposes is appropriate; or (2) whether the notification procedures proposed by the parties are sufficient.

### IV. CONCLUSION

The Court denies preliminary approval of the proposed settlement agreement, but grants leave to move again for preliminary approval should the parties reach a settlement agreement that cures the deficiency identified in this order. The Court will set a case management conference if it does not receive a renewed motion for preliminary approval of an amended class action settlement within 30 days of the date of this order.

**IT IS SO ORDERED.**

Dated: May 14, 2015

                                                                         _____
                                                                         HAYWOOD S. GILLIAM, JR.
                                                                         United States District Judge

---

[1] While it is the parties' burden to reach a settlement that satisfies Rule 23, the Court anticipates that creating a subclass of employees who worked at least one ten-hour shift, and then splits approximately 70% of the distributable settlement amount based on the number of ten-hour shifts worked by employees in that subclass, will likely meet the relevant standard. Under that potential allocation method, the remaining 30% of the distributable settlement amount would be shared by all class members in the same manner proposed by Plaintiff in the instant motion.