UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL ALTAMIRANO,<br><br>Plaintiff,<br><br>v.<br><br>SHAW INDUSTRIES, INC., et al.,<br><br>Defendants. | Case No. 13-cv-00939-HSG<br><br>**ORDER GRANTING SECOND MOTION FOR PRELMINARY APPROVAL**<br><br>Re: Dkt. No. 80 |

Before the Court is Plaintiff's second unopposed motion for preliminary approval of the class action settlement agreement and for certification of the settlement class. Dkt. No. 80 ("Mot."). Pursuant to that agreement, Defendants Shaw Industries, Inc. and Shaw Industries Group, Inc. (collectively, "Shaw"), have agreed not to oppose Plaintiff's motion. Also pending before the Court is Plaintiff's motion to amend the complaint for purposes of settlement. *Id*.

Pursuant to Civil Local Rule 7-1(b), this motion is deemed suitable for disposition without oral argument, and the hearing scheduled for August 6, 2015, is therefore vacated. After careful consideration of the settlement agreement and the parties' arguments, the Court **GRANTS** Plaintiff's motion for preliminary approval and permission to file a Second Amended Complaint.

**I.    BACKGROUND**

**A.    Litigation History**

This action began on January 22, 2013, when Altamirano filed the original Complaint in the Superior Court of the State of California, County of Alameda, Case No. RG13664252. Altamirano filed a First Amended Complaint ("FAC") on February 13, 2013. On March 1, 2013, Shaw removed the action to the United States District Court for the Northern District of California. Plaintiff submitted a Second Amended Complaint ("SAC") to the Court in conjunction with the instant motion seeking preliminary approval of the class action settlement agreement. *See*

Dkt. No. 57-2, 68-2, 80-2.

The SAC asserts nine causes of action related to Shaw's alleged: (1) payroll policies that "shaved" or "rounded" minutes from daily time worked, resulting in minimum wage and overtime violations, *see* SAC ¶¶ 13-19; (2) failure to pay employees for legally required meal breaks and rest periods, *id*. ¶¶ 20-27; (3) failure to provide accurate wage statements, *id*. ¶¶ 28-30; and (4) failure to pay employees all wages due at the time of termination or resignation, *id*. ¶¶ 31-32.  The parties participated in a mediation on October 25, 2013 and, while no settlement was reached that day, continued to discuss settlement with the aid of the mediator until an agreement was finalized approximately one year later.  *See* Mot. at 4.

### B.   Plaintiff's First Motion for Preliminary Approval

Plaintiff filed a motion for preliminary approval of the class action settlement agreement on November 12, 2014, Dkt. No. 57, and an amended motion for preliminary approval on February 16, 2015 after this case was reassigned, Dkt. No. 68.  The Court heard oral argument on March 26, 2015 and denied the amended motion for preliminary approval without prejudice on May 14, 2015, Dkt. No. 78.  In that order, the Court found that the agreement suffered from an obvious deficiency in that—by calculating individual settlement payments based solely on a *pro rata* share of wages earned—it drastically undercompensated class members who worked the 9.8% of shifts that were longer than ten hours.  *Id*. at 7-8.  Plaintiff's proposed formula resulted in undercompensation because, based on the parties' own calculations, 70% of Shaw's maximum potential exposure was attributable to missed second meal breaks and third rests breaks to which only employees working a ten hour shift would be entitled.  *Id*.  The Court found that Plaintiff's proposed *pro rata* method did not account for this reality and thus was not fair or reasonable under Rule 23.  *Id*.  The Court's order provided leave for Plaintiff to file a renewed motion for preliminary approval, which was submitted on June 9, 2015.

### C.   Overview of the Proposed Settlement

The parties have submitted a Joint Stipulation and Settlement Agreement for the Court's review.  *See* Declaration of Joseph Lavi, Ex. 1 (the "Settlement Agreement").  The key provisions of the Settlement Agreement are as follows.

2

1    *Payment Terms*:  In full settlement of the claims asserted in this lawsuit, Shaw agrees to pay $500,000 within 15 business days from the date of entry of the order granting final approval of the class action settlement. *Id*. This amount includes payments to class members for release of their claims, any award of attorneys' fees and costs, the settlement administrator's costs, a $1,500 payment to the Labor and Workforce Development Agency pursuant to California's Private Attorneys General Act ("PAGA"), and any incentive award to Mr. Altamirano. *Id*. at 18-19.

The Settlement Agreement estimates that if the Court approves the maximum amount of attorneys' fees and costs, the PAGA Payment, and the incentive award to Mr. Altamirano, the estimated amount distributable to the class should be approximately $328,100. *Id*. at 19. The amount payable to each class member depends on the number of class members that opt into the Settlement. *Id*. at 20. Seventy percent of the distributable amount will be divided amongst the authorized claimants that worked shifts longer than 10 hours, with each individual receiving a *pro rata* share based on the number of qualifying shifts they worked compared to the total number of all qualifying shifts worked by all class members. *Id.* at 19-20. The remaining thirty percent will be distributed by dividing each class member's gross wages earned during the class period by the total gross wages earned by all participating class members during the class period, and then multiplying that percentage by thirty percent of the distributable amount. *Id*. at 20. The settlement amount is non-reversionary, meaning that in no circumstance will any of the $500,000 revert to Shaw, regardless of how many class members choose to participate in the settlement. *Id*. at 18.

*Attorneys' Fees and Costs*:  The Settlement Agreement authorizes class counsel to apply to the Court for an award of attorneys' fees and costs, which Shaw has agreed not to oppose. *Id*. at 21. Class counsel will request $125,000 in attorneys' fees and $17,000 in costs. *Id*. at 18.

*Incentive Payment*:  The Settlement Agreement authorizes Mr. Altamirano to seek a $4,400 incentive payment for his participation in this lawsuit, which Shaw will not oppose. *Id*. at 21.

*Releases*:  The Settlement Agreement provides that all class members other than those who opt out shall release Shaw from:

> [A]ll Released Claims, whether known or unknown during the Class

3

> Period.  Nothing in this Agreement abridges a Class Member's right [to] file a charge or participate in any manner in an investigation, hearing, or proceeding under the laws enforced by Equal Employment Opportunity Commission.  Plaintiff and Defendant stipulate and agree that the consideration paid to the Class Members pursuant to this Agreement compensates the Class Members for all wages and penalties due to them arising from the claims alleged in the Operative Complaint.

*Id*. at 27.  The Settlement Agreement defines "Released Claims" to mean:

> [A]ny and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages or causes of action which relate to any claims which were alleged or could have been alleged based on the facts in the Operative Complaint filed by Plaintiff, on his behalf and on behalf of the Class Members in this Action during the Class Period, through the date of preliminary approval of this settlement by the Court, for (1) Failure to pay minimum wages for all time worked in violation of California Labor Code sections 1194 and 1197; (2) Failure to pay overtime wages for all time worked in violation of California Labor Code section 510; (3) Failure to provide meal periods or pay meal period premiums in violation of California Labor Code sections 512 and 226.7; (4) Failure to provide accurate wage statements in violation of California Labor Code section 226; (5) Failure to timely pay final wages in violation of Labor Code sections 201 and 202; (6) Unfair business acts and practices in violation of California Business and Professions Code sections 17200, et seq.; and (7) Civil Penalties pursuant to California Labor Code sections 2698, et seq.; (8) Failure to pay minimum wages for all time worked in violation of 29 U.S.C. 201, et seq.; (9) Failure to pay overtime wages for all time worked in violation of 29 U.S. C. 201, et seq.; and (10) Failure to authorize and permit rest breaks or pay rest break premiums in violation of California Labor Code section 226.7, as well as claims for restitution and equitable relief, expenses, punitive damages, waiting time penalties, penalties of any nature whatsoever, and attorneys' fees and costs, arising out of the claims which were alleged in the Operative Complaint.  For Class Members who submit Claim Forms, "Released Claims" include Fair Labor Standards Act ("FLSA") claims whether known or unknown, arising during the class period for the Class Members, based on the claims reasonably related to those alleged in the Lawsuit. . . .
>
> . . . This release is limited in time to the Class Period covering the Class Members who worked for the Released Persons in the State of California, and limited to the causes of action that were alleged in the Operative Complaint or based on the facts alleged in the Operative Complaint.  Nothing in this Agreement abridges a Class Member's right to file a charge or participate in any manner in an investigation, hearing, or proceeding under the laws enforced by Equal Employment Opportunity Commission.

*Id*. at 5-6.  Further, the Settlement Agreement provides that, with respect to the foregoing Released Claims, class members "expressly [waive] the benefits of California Civil Code §1542."  *Id*. at 6.

4

*Procedure for Claims and Settlement*:  Class counsel is required to move for preliminary and final Court approval of the Settlement Agreement.  *Id*. at 10.  No later than 15 days after the Court's preliminary approval of the Settlement Agreement, Shaw will provide CPT Group, Inc. ("CPT Group")—the proposed settlement administrator—a list containing the class members' names, last known addresses, last known telephone number, total wages earned during the class period, total number of shifts exceeding 10 hours worked, and social security number, which will be used to send notice packets.  *Id.* at 12.  CPT Group will mail a notice packet to each class member, which will consist of the proposed Class Settlement Notice and the Claim Form, no later than 20 days of receipt of the class member list.  *Id*.  Before mailing the Notice of Settlement, CPT Group will review the national change of address registry and/or skip trace to determine the most up-to-date address of all class members.  *Id*.  CPT Group will send a reminder postcard 20 days before the deadline for the class members to submit their claim forms.  *Id.*

The Claim Form requires class members to fill out their first and last names, street address, including city, state, and zip code, telephone number, and signature.  *Id*. at 12-14.  All Claim Forms must be sent by U.S. mail and postmarked within 45 days from the original date of mailing.  *Id.*  Claim forms that are post-marked after that date will be accepted prior to final approval hearing only if the class member: (1) is seriously ill or incapacitated, or (2) failed to receive the Claim Form within 45 calendar days of mailing due to an incorrect address, provided the Class Member provides sufficient indicia to CPT Group to that effect.  *Id*.  Any person who fails to submit a valid and timely Claim Form shall not receive an individualized Settlement Payment from the Settlement, but, unless they submit a timely request to be excluded (Opt-Out) from the Settlement, they will still be bound by the Agreement.  *Id.*  No later than 15 business days following the close of the Claims filing period, the Settlement Administrator shall provide Class Counsel and counsel for Shaw with a declaration attesting to the completion of the notice process, which shall be submitted to the Court along with the motion for final approval.  *Id*. at 16.  The settlement administrator's actual costs and expenses in carrying out its duties are capped at $24,000.  *Id*. at 8.

*Unclaimed Settlement Funds*:  The Settlement Amount will be distributed to class

5

1  members based on the formulas described above.  Accordingly, there will be no unclaimed
2  settlement funds.
3      *Objections*:  Any class member who has not opted out may file an objection to the
4  Settlement Agreement (or any of its terms) within 45 calendar days after the Class Settlement
5  Notice is mailed to the class member.  *Id*. at 17.
6      *Settlement Award Checks*:  Within 15 days of receipt of Shaw's payment of the Settlement
7  Amount, CPT Group shall issue checks for participating class members for an amount calculated
8  using the formula discussed above, minus any deductions required by law.  Any deduction for
9  wages that normally would apply to the class members is to be borne by the class members from
10  the value of their claim.  Any settlement checks remaining uncashed after 180 calendar days after
11  being issued shall be void and the amount shall be escheated to the State of California pursuant to
12  California Code of Civil Procedure Section 1513.  *Id*. at 23.

## II.    CONDITIONAL CLASS CERTIFICATION

14      Class certification under Rule 23 is a two-step process. First, a plaintiff must demonstrate
15  that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and
16  adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous
17  analysis,' that Rule 23(a) has been satisfied."  *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829,
18  833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).
19  Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Here,
20  by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class
21  members predominate over any questions affecting only individual members, and . . . [that] a class
22  action is superior to other available methods for fairly and efficiently adjudicating the
23  controversy."  Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of
24  demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at
25  least one of the three requirements under Rule 23(b) are met.  *See Wal-Mart*, 131 S. Ct. at 2551.

### A.    Rule 23(a)(1)—Numerosity

27      Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is
28  impracticable."  Numerosity is satisfied here because the proposed settlement class includes

1   millions of potential members. Joinder of the estimated 747 individuals would be impracticable in
2   this action.

### B. Rule 23(a)(2)—Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the purposes of Rule 23(a)(2), even a single common question is sufficient. *Wal-Mart*, 131 S. Ct. at 2556. The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation omitted).

The Court finds that the proposed class satisfies the commonality requirement because, at a minimum, the existence of Shaw's alleged payroll policies that "shaved" or "rounded" minutes from its employees' daily time worked implicate the class members' claims as a whole.

### C. Rule 23(a)(3)—Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citation omitted).

The Court finds that class representative Altamirano is typical of the class he seeks to represent. Like the rest of the settlement class, Altamirano alleges that he worked for Shaw during the time period when Shaw allegedly carried out the misconduct alleged in this action.

### D. Rule 23(a)(4)—Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed:

1  (a) do the named plaintiffs and their counsel have any conflicts of interest with other class
2  members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on
3  behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The
4  requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)."
5  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v.*
6  *Falcon*, 457 U.S. 147, 158 n.13 (1982)). Among other purposes, these requirements determine
7  whether "the named plaintiff's claim and the class claims are so interrelated that the interests of
8  the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at
9  158 n.13. Adequacy of representation requires two legal determinations: "(1) do the named
10 plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the
11 named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*
12 *v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)

13     No evidence in the record suggests that the class representative or class counsel have a
14 conflict of interest with other class members. Plaintiff's counsel has substantial experience
15 prosecuting employment class actions. *See* Lavi Decl. at ¶ 3-4. The Court finds that proposed
16 class counsel and the named plaintiff have prosecuted this action vigorously on behalf of the class,
17 and will continue to do so. The adequacy requirement is therefore satisfied.

18     **E.  Rule 23(b)(3)—Predominance and Superiority**

19     To certify a Rule 23 damages class, the Court must find that "questions of law or fact
20 common to class members predominate over any questions affecting only individual members,
21 and . . . [that] a class action is superior to other available methods for fairly and efficiently
22 adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether
23 proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*,
24 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be
25 resolved for all members of the class in a single adjudication, there is clear justification for
26 handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at
27 1022 (citation omitted).

28     Here, the Court finds that—for the purposes of settlement—the common questions raised

by Plaintiff's claims predominate over questions affecting only individual members of the proposed class. In particular, Plaintiff alleges that Shaw enforced blanket payroll policies that "shaved" or "rounded" minutes from its employees' daily time worked. Whether this allegation has a basis in fact is a common question that would largely resolve the claims of all class members. The predominance requirement is therefore satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires the Court to determine whether the objectives of the particular class action procedure will be achieved in the particular case." *Id*. at 1023. Here, because common legal and factual questions predominate over individual ones, and taking into account the sheer size of the proposed class, the Court finds that the judicial economy achieved through common adjudication makes a class action a superior method for adjudicating the claims of the proposed class.

Finally, while not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" *Vietnam Veterans of Am. v. C.I.A*., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071, n.4 (9th Cir. 2014) (referring, in dicta, to the "threshold ascertainability test"). "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" *Vietnam Veterans*, 288 F.R.D. at 211 (quoting *O'Connor v. Boeing N. Am., Inc*., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

Courts have considered at least three types of "ascertainability" concerns when determining whether class certification is appropriate: (1) whether the class can be ascertained by reference to objective criteria; (2) whether the class includes members who are not entitled to recovery; and (3) whether the putative named plaintiff can show that he will be able to locate absent class members once a class is certified. *See Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at *3-4 (N.D. Cal. Sept. 18, 2014). The proposed class in this case does not present any of these concerns. Shaw maintains a list containing the class members' names, last known addresses, last known telephone number, total wages earned during the class period, total number of shifts

1   exceeding 10 hours worked, and social security number, which will be used to send notice

2   packets. Settlement Agreement at 12. This information will allow CPT Group to identify and

3   locate class members with sufficient confidence to satisfy the ascertainability requirement.

### F.     Appointment of Class Representatives and Class Counsel

Because the Court finds that Altamirano meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as class representative. When a court certifies a class, the court must appoint class counsel and must consider:

(i)    the work counsel has done in identifying or investigating potential claims in the action;
(ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii)  counsel's knowledge of the applicable law; and
(iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel have prosecuted this action by: (1) investigating class members' potential claims; (2) propounding and reviewing discovery; (3) analyzing a representative sample of the class members' punch history; (4) participating in a full-day mediation; (5) negotiating this Settlement Agreement; and (6) briefing the instant motion for preliminary approval. Plaintiff's counsel has substantial prior experience prosecuting employment actions. *See* Lavi Decl. at ¶ 3; Declaration of Sahag Majarian at ¶¶ 2-3. For these reasons, the Court will appoint Joseph Lavi of Lavi & Ebrahimian LLP and Sahag Majarian II of The Law Offices of Sahag Majarian as co-lead class counsel pursuant to Federal Rule of Civil Procedure 23(g).

### III.    PRELIMINARY APPROVAL

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair

settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a court approves a settlement it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

In general, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026. However, where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D.Cal. 2007); *see also Alvarado v. Nederend*, No. 08-cv-01099 OWW DLB, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . ."). The Court considers the settlement as a whole, rather than its components, and lacks the authority to "delete, modify or substitute certain provision." *Id*. (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir.1982)). Rather, "[t]he settlement must stand or fall in its entirety." *Id*.

11

### A. The Settlement Process

The first factor the Court examines is the means by which the parties arrived at the settlement. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). Here, the parties reached their settlement after performing an analysis of a representative sample of class members' punch history and after mediation before an impartial mediator. That the settlement was reached only after these events strongly suggests the absence of collusion or bad faith by the parties or counsel. *See Chun-Hoon v. McKee Foods Corp*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Satchell v. Fed. Exp. Corp.*, No. 03-cv-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### B. Obvious Deficiencies

The second factor the Court considers is whether there are obvious deficiencies in the Settlement Agreement. As discussed above, the plan of allocation submitted to the Court along with Plaintiff's second motion for preliminary approval has remedied the obvious deficiency identified in the Court's May 14, 2015 order. Dkt. No. 78. Accordingly, the Court finds no obvious deficiencies in this version of the Settlement Agreement.

### C. Preferential Treatment

Under the third factor, the Court examines whether the Settlement Agreement provides preferential treatment to any class member. The revised plan of allocation submitted to the Court compensates class members in a manner generally proportionate to the harm they suffered on account of Shaw's alleged misconduct. While the Settlement Agreement authorizes Altamirano to seek an incentive award of $4,400 for his role as named plaintiff in this lawsuit, the Court will ultimately determine whether he is entitled to such an award and the reasonableness of the amount requested. The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-

69 (9th Cir. 2009).

## D. Whether the Settlement Falls Within the Range of Possible Approval

Finally, the Court must consider whether the Settlement Agreement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp.2d at 1080) (internal quotations omitted). Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). Although the Court undertakes a more in-depth investigation of the foregoing factors at the final approval stage, these factors inform whether the Settlement Agreement falls within the "range of possible approval."

The Court first considers the class' expected recovery balanced against the value of the settlement offer, taking into account the strength of the plaintiff's case. The settlement provides $500,000, which Plaintiff represents to be approximately 15% of Shaw's maximum potential exposure. Mot. at 22. Plaintiff argues that this is a fair compromise within the range of reasonableness given Shaw's defenses. *Id.* The Court agrees. The parties' submissions evidence that Shaw has several significant defenses to liability, which could substantially reduce the class members recovery (or preclude it entirely). Although 15% represents a modest fraction of the hypothetical maximum recovery estimated by Plaintiff, that figure is sufficient for the Court to grant preliminary approval given the merits of Plaintiff's claims.

Second, the settlement amount is adequate given the expense, complexity, and duration of further litigation. In order to prevail in this action, Plaintiff would be required to successfully

move for class certification, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal. The risks and costs associated with class action litigation weigh strongly in favor of settlement.

The third factor concerning whether class certification can be maintained through trial also weighs in favor of settlement. Certifying a class of hundreds of employees presents complex issues that could undermine certification at many different stages of the litigation.

Fourth, the $500,000 settlement amount, while constituting only a 15% of the class members' maximum potential exposure, is reasonable given the stage of the proceedings and the defenses asserted in this action.

Fifth, the parties have undertaken sufficient discovery to inform their view of the reasonableness of the Settlement Agreement. In addition to formal written discovery, the parties performed an independent analysis of thousands of punch histories in order to inform their settlement negotiations.

The sixth factor takes into account counsel's experience and their respective views of the Settlement Agreement. The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the class' interests in this action. The Court notes, however, that courts have taken divergent views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.") *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). The Court finds that this factor tilts in favor of approval, even though the Court affords only modest weight to the views of counsel.

The seventh factor is inapplicable because there is no governmental participant in this case.

Eighth, because the class has not yet been formally notified of the settlement, the Court cannot undertake any evaluation of class members' reaction to the settlement, including the number and substance of any objections.

Having weighed these eight factors, the Court finds that the Settlement Agreement falls

1  within the range appropriate for preliminary approval.

2  **IV.     PROPOSED CLASS NOTICE AND NOTIFICATION PROCEDURES**

3  The class notice in a Rule 23(b)(3) class action must comport with the requirements of due

4  process. "[T]he plaintiff must receive notice plus an opportunity to be heard and participate in

5  litigation, whether in person or through counsel." The notice must be "the best practicable,"

6  "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

7  the action and afford them an opportunity to present their objections." *Philips Petroleum Co. v.*

8  *Shutts*, 472 U.S. 797, 812 (1985) (citations omitted). "The notice should describe the action and

9  the plaintiffs' rights in it." *Id*. Rule 23(c)(2)(B) provides, in relevant part:

> The notice must clearly and concisely state in plain, easily
> understood language: (i) the nature of the action; (ii) the definition
> of the class certified; (iii) the class claims, issues, or defenses; (iv)
> that a class member may enter an appearance through an attorney if
> the member so desires; (v) that the court will exclude from the class
> any member who requests exclusion; (vi) the time and manner for
> requesting exclusion; and (vii) the binding effect of a class judgment
> on members under Rule 23(c)(3).

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from

the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Id.*

The parties propose to use CPT Group as the settlement administrator for the class. The

Court finds that CPT Group is qualified to perform the tasks associated with administering the

notice and claims procedures outlined in the Settlement Agreement and therefore approves CPT

Group as the settlement administrator. CPT Group will, among other tasks, provide notice,

calculate awards, process requests for exclusion and objections, and mail class members their

settlement awards. The proposed notice contains all the information required under the Federal

Rules and, accordingly, the Court finds notice plan comports with due process requirements.

**V.    NOTICE OF MOTION AND AWARD OF ATTORNEYS' FEES AND COSTS**

The settlement notice informs class members that class counsel will file a motion seeking

an award of attorneys' fees in the amount of 25% of the total $500,000 settlement amount, plus

their out-of-pocket expenses not to exceed $17,000. Lavi Decl., Ex. 3 at 3. To enable class

members to review class counsel's motion, class counsel shall include language in the settlement

15

notice indicating the deadline for filing the attorneys' fees motion, specifically stating the deadline for any class member objections to the fees motion, and informing class members that the motion and supporting materials will be available for viewing on class counsel's website. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion). That motion shall be filed with the Court and posted on class counsel's website not later than 20 days before class members' objections are due.

## VI. SETTLEMENT APPROVAL SCHEDULE

The Settlement Agreement stipulates to certain deadlines triggered by the issuance of this Order. However, the parties are directed to meet and confer and stipulate to a schedule of precise dates for each event listed below, which shall be submitted to the Court along with a proposed order within seven days of this Order.

| Event | Date |
|---|---|
| Deadline to mail claim packets | |
| Deadline to send reminder postcards | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Last date to file objections | |
| Last date to submit claims | |
| Filing deadline for final approval motion | |
| Final Fairness hearing and hearing on motions | |

## VII. CONCLUSION

The Court **GRANTS** Plaintiff's Second Motion for Preliminary Approval of Class Action Settlement and permission to file the Second Amended Complaint. The parties are directed to comply with the instructions provided above.

**IT IS SO ORDERED.**

Dated: July 24, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge