UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL ALTAMIRANO,<br><br>  Plaintiff,<br><br>   v.<br><br>SHAW INDUSTRIES, INC., et al.,<br><br>  Defendants. | Case No. 13-cv-00939-HSG<br><br>**ORDER GRANTING MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENT**<br><br>Re: Dkt. Nos. 88, 89, 93 |

Pending before the Court are three motions filed by Plaintiff Fidel Altamirano. Plaintiff moves for (1) final approval of the class action settlement, Dkt. No. 93; (2) final approval of an award of attorneys' fees and costs, Dkt. No. 89; and (3) final approval of a class representative service payment, Dkt. No. 88. Defendants Shaw Industries, Inc. and Shaw Industries Group, Inc. do not oppose the motions. The Court held a final fairness hearing on January 7, 2016. Dkt. No. 97. For the reasons stated below and at the hearing, the Court GRANTS the motions.

**I.  BACKGROUND**

  **A.  Litigation History**

Plaintiff filed this class action in Alameda County Superior Court on January 22, 2013. Dkt. No. 1. On March 1, 2013, Defendants removed the action to this Court. *Id.* Plaintiff filed the operative second amended complaint ("SAC") on August 5, 2015. Dkt. No. 87.

The SAC asserts nine causes of action related to Defendants' alleged: (1) payroll policies that "shaved" or "rounded" minutes from daily time worked, resulting in minimum wage and overtime violations, *see id.* ¶¶ 13-19; (2) failure to pay employees for legally required meal breaks and rest periods, *id.* ¶¶ 20-27; (3) failure to provide accurate wage statements, *id.* ¶¶ 28-30; and (4) failure to pay employees all wages due at the time of termination or resignation, *id.* ¶¶ 31-32.

The parties exchanged written discovery requests, produced thousands of pages of documents, and scheduled Plaintiff's deposition. Dkt. No. 90 ("Lavi Decl.") ¶¶ 6-8. On October 25, 2013, the parties participated in mediation and, while no settlement was reached that day, continued to discuss settlement with the aid of the mediator until an agreement was finalized approximately one year later. *See id.* at ¶¶ 9-10.

Plaintiff filed a motion for preliminary approval of the class action settlement agreement on November 12, 2014, Dkt. No. 57, and an amended motion for preliminary approval on February 16, 2015, after this case was reassigned, Dkt. No. 68. The Court heard oral argument on March 26, 2015, and denied the amended motion for preliminary approval without prejudice on May 14, 2015. Dkt. No. 78. In that order, the Court found that the agreement suffered from an obvious deficiency: by calculating individual settlement payments based solely on a pro rata share of wages earned, it drastically undercompensated class members who worked shifts that were longer than ten hours. *Id*. at 7-8. The Court's order provided Plaintiff leave to file a second motion for preliminary approval, which was submitted on June 9, 2015. Dkt. No. 80. On July 24, 2015, the Court granted Plaintiff's second motion for preliminary approval of the class action settlement. Dkt. No. 84.

In accordance with the court-approved notice plan, the appointed settlement administrator mailed class notices and claim forms to 735 settlement class members. Dkt. No. 93-2, Ex. 15 ("Cunningham Decl.") ¶¶ 3-8. In addition, the settlement administrator mailed reminder postcards to 664 settlement class members who had not submitted a response by October 13, 2015. *Id.* A total of 220 settlement class members submitted claim forms by the final deadline. *Id.* No objections were filed, and only one class member opted out of the settlement. *Id.* ¶¶ 12-17.

**B.  Overview of the Proposed Settlement**

In full settlement of the claims asserted in this lawsuit, Defendants agree to pay $500,000 within 15 business days from the date this Order is entered. Lavi Decl., Ex. 1 ("Settlement Agreement"). This amount includes payments to class members for release of their claims, any award of attorneys' fees and costs, the settlement administrator's costs, a $1,500 payment to the Labor and Workforce Development Agency pursuant to California's Private Attorneys General

2

Act ("PAGA"), and any incentive award to Mr. Altamirano. *Id*. at 18-19.

The proposed settlement defines the settlement class as all "current or former hourly, non-exempt employee of [Defendants] who performed paid work for [Defendants] in California" from January 22, 2009, up to and including the date of preliminary approval of the settlement. *Id.* at 2.

The amount payable to each class member under the terms of the Settlement Agreement depends on the number of class members that submit settlement claim forms. *Id*. at 20. Seventy percent of the distributable amount will be divided amongst the authorized claimants that worked shifts longer than 10 hours, with each individual receiving a pro rata share based on the number of qualifying shifts they worked compared to the total number of qualifying shifts worked by all class members. *Id.* at 19-20. The remaining thirty percent will be distributed by dividing each class member's gross wages earned during the class period by the total gross wages earned by all participating class members during the class period, and then multiplying that percentage by thirty percent of the distributable amount. *Id*. at 20. The settlement amount is non-reversionary, meaning that in no circumstance will any of the $500,000 revert to Defendants, regardless of how many class members submit claim forms. *Id*. at 18.

The Settlement Agreement provides that all class members other than those who opt out shall release Defendants from "all Released Claims, whether known or unknown during the Class Period." *Id*. at 27. The Settlement Agreement defines "Released Claims" to mean:

> [A]ny and all claims . . . which relate to any claims which were alleged or could have been alleged based on the facts in the Operative Complaint filed by Plaintiff . . . for (1) Failure to pay minimum wages for all time worked in violation of California Labor Code sections 1194 and 1197; (2) Failure to pay overtime wages for all time worked in violation of California Labor Code section 510; (3) Failure to provide meal periods or pay meal period premiums in violation of California Labor Code sections 512 and 226.7; (4) Failure to provide accurate wage statements in violation of California Labor Code section 226; (5) Failure to timely pay final wages in violation of Labor Code sections 201 and 202; (6) Unfair business acts and practices in violation of California Business and Professions Code sections 17200, et seq.; and (7) Civil Penalties pursuant to California Labor Code sections 2698, et seq.; (8) Failure to pay minimum wages for all time worked in violation of 29 U.S.C. 201, et seq.; (9) Failure to pay overtime wages for all time worked in violation of 29 U.S. C. 201, et seq.; and (10) Failure to authorize and permit rest breaks or pay rest break premiums in violation of California Labor Code section 226.7, as well as claims for

> restitution and equitable relief, expenses, punitive damages, waiting time penalties, penalties of any nature whatsoever, and attorneys' fees and costs, arising out of the claims which were alleged in the Operative Complaint. For Class Members who submit Claim Forms, "Released Claims" include Fair Labor Standards Act ("FLSA") claims whether known or unknown, arising during the class period for the Class Members, based on the claims reasonably related to those alleged in the Lawsuit.

*Id*. at 5-6. Further, the Settlement Agreement provides that, with respect to the foregoing Released Claims, class members "expressly [waive] the benefits of California Civil Code §1542." *Id*. at 6.

Within 15 days of receipt of Defendants' settlement payment, the Settlement Agreement requires the settlement administrator to issue checks for participating class members. Any settlement checks uncashed after 180 calendar days shall be void, and the amount shall be escheated to the State of California pursuant to California Code of Civil Procedure § 1513. *Id*. at 23.

## II.   DISCUSSION

### A.   Motion for Final Approval of Class Action Settlement

#### 1. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement only after a hearing and a finding that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(2). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Id.* When making this decision, courts consider the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.* at 1025.

#### 2. Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

4

including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, the class claims, class members' right to exclude themselves from the class, and the binding effect of any class judgment. Fed. R. Civ. P. 23(c)(2)(B). Additionally, before granting final approval of a proposed class settlement, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* 23(e)(1). While Rule 23 requires that "reasonable effort" be made to reach all class members, it does not require that each individual actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

The Court previously approved the notice and notice plan proposed by the parties. *See* Dkt. No. 84. As described above, in accordance with the Court's orders, the settlement administrator mailed the approved notice to 735 settlement class members and reminder postcards to the 664 settlement class members who had not submitted a response by October 13, 2015. Only five notice packets were ultimately undeliverable. Cunningham Decl. ¶ 10. A total of 220 settlement class members representing 62.33% of the distributable settlement amount submitted claim forms by the final deadline. *Id.* ¶ 18. No objections were filed, and only one class member opted out of the settlement.

In light of these facts, the Court finds that the notice and notice procedures used here complied with the requirements of Rule 23(e).

### 3. Fairness, Adequacy, and Reasonableness of Settlement

Having found the notice procedures adequate, the Court next considers whether the settlement as a whole comports with Rule 23(e).

#### i. Strength of Plaintiff's Case and Risk of Continued Litigation

Approval of a class settlement is appropriate when plaintiffs must overcome "significant barriers" to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at \*9 (N.D.

5

Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotation marks omitted).

While Plaintiff maintains that he would likely prevail on the merits of his case, he would face substantial challenges in continued litigation. First, it is not clear that Plaintiff could successfully maintain class certification throughout the litigation. Defendants argue that documentary evidence and witness testimony show that there were no unlawful company-wide policies or practices in effect, which would require individualized consideration of each employee's experience. If individualized issues pervade the factual analysis such that no common questions of law or fact exist, class certification cannot be maintained. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556-57 (2011). Second, even if Plaintiff successfully certified a class, Defendants argue that they had proper meal and rest policies and procedures in place. Finally, even if Plaintiff prevailed on the merits, the litigation likely would have taken substantial time to complete.

The Court finds that these factors weigh in favor of settlement.

### ii. Settlement Amount

This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. 13-cv-02376-EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks omitted).

Plaintiff calculates that the gross settlement amount represents approximately 14.3% of the unpaid wages at issue, excluding penalties, which in turn means that the net settlement amount represents approximately 9.5% of the unpaid wages potentially recoverable at trial. Dkt. No. 93-1

6

at 11. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within the range of reasonableness in light of the risks and costs of litigation. *See Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial). Accordingly, this factor weighs in favor of approval.

### iii. Stage of Proceedings

"This factor evaluates whether the parties have sufficient information to make an informed decision about settlement." *Larsen v. Trader Joe's Co.*, No 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) (internal quotation marks omitted). "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (internal quotation marks omitted). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.* (internal quotation marks omitted).

Here, prior to reaching a settlement, Plaintiff served multiple written discovery requests on Defendants, reviewed thousands of pages of documents, scheduled his deposition, and was in the process of filing a motion for summary adjudication. Lavi Decl. ¶¶ 6-8. The Court finds that the parties adequately understood the merits of the case before settlement negotiations began. Accordingly, this factor weighs in favor of approval.

### iv. Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The Court has previously evaluated class counsel's qualifications and experience and has concluded that counsel is qualified to represent the class's interests in this action. Dkt. No. 84. The Court notes, however, that courts have taken divergent

views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). The Court finds that this factor tilts in favor of approval, even though the Court affords only modest weight to the views of counsel.

### v. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). A small number of objections to and opt-outs from a settlement "presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

Here, the overwhelming majority of settlement class members reacted favorably to the proposed settlement. Of the 735 class members notified, only 1—or 0.1%—opted out of the settlement. Moreover, no objections were filed. The Court finds that this factor weighs in favor of approval.

\* \* \*

After considering and weighing all of the above factors, the Court finds that the proposed class action settlement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiff's motion for final approval of class action settlement is granted.

### B. Motion for Final Approval of Attorneys' Fees and Costs

Class counsel requests an award of $125,000 in fees and $17,000 in costs.

#### 1. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Because California law governed the claim here, it also governs the award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under California law, "the award of attorney fees is proper . . . if (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 317-18 (1983) (internal quotation marks omitted). Based on these criteria, and the parties' agreement, the Court finds that class counsel is entitled to attorneys' fees.

Additionally, class counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).

### 2. Class Counsel's Request for Fees is Reasonable

Under California law, courts have the power to award reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons. *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977). The two primary methods for determining reasonable fees in the class action settlement context are the "lodestar/multiplier" method and the "percentage of recovery" method. *See Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 254 (2001); *accord Hanlon*, 150 F.3d at 1029.

The Court first considers the lodestar method. The first step in the lodestar analysis is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly billing rate. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004); *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may apply a multiplier to the lodestar if warranted upon consideration of certain enhancement factors like (1) the results obtained; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary to litigate the case; (4) the preclusion of other employment due to acceptance of the case; and (5) whether the fee is fixed or contingent. *See Serrano*, 20 Cal. 3d at 48.

Here, class counsel calculated total lodestar fees of $135,732.50 based on 219 total hours worked as of October 13, 2015. Dkt. No. 89-1 at 10-11. The Court has reviewed class counsel's time records and billing reports, and finds that the number of hours devoted to this case is

reasonable. The Court further finds that the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation.

Class counsel's fee request of $125,000 is less than the lodestar amount. Moreover, the propriety of the requested fee award is confirmed by a cross-check based on the percentage of the gross settlement amount obtained. The agreed-upon fee here represents 25% of the settlement's gross cash value, which equals the "benchmark" percentage applied in the Ninth Circuit. The Court finds that the requested fee award is reasonable and therefore grants the request.

### 3. Class Counsel's Request for Costs is Reasonable

Class counsel has provided an itemized list of the costs incurred during this litigation, separated by category. *See* Lavi Decl., Ex. 4; Dkt. No. 91 ("Majarian Decl."), Ex. C. Class counsel incurred a total of $20,242.87 in costs, broken down as $1,439 in filing fees, $2,870.83 in service and messenger costs, $4,750 in mediation costs, $5,400 in expert data analysis costs, and $4,450 in travel costs. *Id.* However, class counsel requests only $17,000 in costs. The Court finds class counsel's request reasonable, and therefore grants the request.

### C. Motion for Final Approval of Class Representative Service Payment

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The district court must evaluate a plaintiff's incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977 (internal quotation marks omitted). In the Ninth Circuit, a $5,000 incentive award is "consistent with the amount courts typically award as incentive payments." *In re Toys-R-Us Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.").

Plaintiff requests a service award of $4,400. During the course of this litigation, Plaintiff

subjected himself to public attention and potential retaliation by acting as named plaintiff. Moreover, he searched for an attorney, collected pertinent documents, traveled to meet with counsel, prepared for his deposition, and assisted in responding to discovery. Dkt. No. 88-1 at 2. In light of Plaintiff's service to the class, the Court finds that the requested service award is fair and reasonable. Accordingly, the Court grants Plaintiff's motion for final approval of class representative service payment.

## III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court grants final approval of the proposed settlement and the plan of administration.

2. The Court grants class counsel $125,000 in attorneys' fees.

3. The Court grants class counsel $17,000 in costs.

4. The Court grants Named Plaintiff Fidel Altamirano a service award of $4,400.

5. The Court approves the payment of $1,500 to the California Labor & Workforce Development Agency.

6. The Court approves the payment of $21,500 in settlement administration costs to CPT, Inc.

7. The class member who requested to opt out of the settlement is excluded from the class.

8. This action is hereby dismissed with prejudice, with each side to bear its own attorneys' fees and costs, except as provided in the Settlement Agreement.

9. The parties shall file a proposed judgment within three days of the date of this Order.

**IT IS SO ORDERED.**

Dated: March 31, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

11